UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                          Case No. 06-cr-20663
-vs-                                    HON. AVERN COHN

D-2, ELIJAH AMIR BAKER,

    Defendant.

_____/

# MEMORANDUM AND ORDER
# DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA
# AS TO COUNT TWO—CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS

## I. Introduction

This is a criminal case. On January 22, 2008, Defendant Elijah Amir Baker ("Baker") executed a Rule 11 Plea Agreement in which he agreed to plead guilty to two counts: (1) Conspiracy to Distribute a Controlled Substance under 21 U.S.C. §§ 846, 841(a), and (2) Conspiracy to Launder Monetary Instruments under 18 U.S.C. § 1956. The Court accepted the plea on February 28, 2008.

Before the Court is Baker's motion to withdraw his guilty plea as to Count Two: Conspiracy to Launder Monetary Instruments. For the reasons that follow, the motion will be denied. As will be explained, Baker knew the drug-trafficking "proceeds" that he counted and loaded into cars included some "profits" that promoted an on-going operation, and this is enough to satisfy the statutory strictures.

## II. Background

Baker was indicted for conspiracy to distribute cocaine along with sixteen other

defendants and for conspiracy to launder money along with twelve other defendants.[1] The events charged took place from 2002 to 2005. As noted above, Baker pled guilty to both counts; he did not agree to cooperate in the case. In his plea, Baker testified that he counted money in Detroit, Michigan, and Los Angeles, California, knowing the money was "proceeds from the sale of drugs." Baker also testified that he loaded or unloaded money in excess of one million dollars into or out of vehicles during a period from 2003 to 2005 and "the cars were taken elsewhere." He also testified that he knew he was involved in a "continuing operation," that "this just wasn't something isolated." In his plea agreement, Baker also affirmed that he "delivered millions of dollars of cocaine proceeds to individuals who facilitated the purchase of cocaine, jewelry, real estate and luxury vehicles in order to promote the drug trafficking activities of the organization and its members."

III. Legal Standard

If a motion to withdraw a plea of guilty is made before sentencing, the Court may permit the plea to be withdrawn if the defendant shows a fair and just reason. Fed. R. Crim. P. 11(d)(2)(B). "Courts have noted that the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone . . . ." United States v. Lineback, 330 F.3d 441, 443 (6th Cir. 2003) (internal quotation marks omitted) (quoting United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir. 1994), superseded on other grounds by statute as stated in United States v. Caseslorente, 220 F.3d 727, 734 (6th Cir. 2000)). Six months have elapsed since Baker entered his guilty plea. The only

---

[1]This group of defendants has been labeled the Black Mafia.

reason he moves now to withdraw his plea are two recent Supreme Court decisions that he says make his plea a nullity because no crime was charged in the indictment given the limitations the cases impose on "money laundering."

IV. Analysis

A. "Proceeds" under 18 U.S.C. § 1956(a)(1)(A)(i)

1. Parties' Arguments

Baker says that under <u>United States v. Santos</u>, 128 S. Ct. 2020 (2008), 18 U.S.C. § 1956(a)(1)(A)(i) applies only to transactions involving criminal profits, not criminal receipts. He concludes that the proceeds he counted were not criminal profits, but were criminal receipts.

The government responds that <u>Santos</u> holds that "proceeds" under § 1956(a)(1) is restricted to "profits" only when the specified unlawful activity charged as the basis for the offense is the operation of an illegal gambling business. In <u>Santos</u>, Justice Scalia was joined by Justices Souter, Ginsburg, and Thomas in finding the term "proceeds" ambiguous and relying on the rule of lenity to hold that "proceeds" in the money-laundering statute means "profits," not gross receipts. 128 S. Ct. at 2023–25. Justice Alito was joined by Chief Justice Roberts and Justices Kennedy and Breyer in rejecting the Scalia plurality's application of the rule of lenity and finding, after a thorough analysis of the meaning of "proceeds" in various money-laundering statutes, that under § 1956(a), "proceeds" means "the total amount brought in." <u>Id.</u> at 2035–45 (Alito, J., dissenting). In a tie-breaking opinion, Justice Stevens took the view that "proceeds" may refer to gross receipts as applied to certain specified unlawful activities, such as the sale of contraband, but to profits as applied to others, such as revenue generated by

3

a gambling business that is used to pay essential expenses of the operation, including the payout of lottery winnings. Id. at 2031–33 (concurring). Justice Stevens based his reasoning on "both a lack of legislative history speaking to the definition of 'proceeds' when operating a gambling business . . . and my conviction that Congress could not have intended the perverse result that would obtain in this case under [the dissent's] opinion." Id. at 2033 (concurring). The "perverse result" is the merger problem identified in the Scalia plurality opinion: "Congress evidently decided that lottery operators ordinarily deserve up to 5 years of imprisonment, § 1955(a), but as a result of merger they would face an additional 20 years, § 1956(a)(1)." Id. at 2026.

Where there is a 4-4 split and a concurring opinion favors the position of one side, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977). The government rejects the applicability of Marks to this case. In Santos, the government argues, there is no "common denominator" of the Supreme Court's reasoning. Id. at 7 (quoting Grutter v. Bollinger, 539 U.S. 306, 325 (2003)). Furthermore, the District of Colorado recently ruled that Marks is inapplicable to Santos because Justice Stevens's concurrence is not a "logical subset" of the plurality opinion. Id. at 9 (quoting Order & Memorandum of Decision at 7, United States v. Orosco, No. 07-cr-00275-EWN (D. Colo. July 17, 2008)).

The government asserts that in courts like the Sixth Circuit that have adopted a "gross receipts" definition of "profits,"[2] Santos overrules only those decisions involving

---

[2]The government mentions "research to date" that leads it to include the Sixth Circuit in this category, yet cites no particular decision. The government's unspecified

4

an illegal gambling business.  Here, the unlawful activity charged involves contraband—specifically, the distribution or sale of controlled substances—not illegal gambling.  Therefore, the government concludes, because the Sixth Circuit interprets "proceeds" to mean "gross receipts," because the interpretation of "proceeds" as "profits" is limited to gambling operations like the one with which Santos was concerned, and because this case deals with contraband rather than gambling, "proceeds" means "gross receipts" here.

Even if "proceeds" means "profits" in contraband-trafficking, the government argues, there is sufficient evidence and sufficient factual basis in Baker's plea agreement and plea colloquy to conclude that Baker conspired to launder money that involved "at least some post-expense 'profits.'"  Baker admitted to counting and delivering millions of dollars that he knew would be used to purchase, among other things, real estate, jewelry, and luxury vehicles.  The government says that in this case, in this district alone, it has seized over nineteen million dollars, and in other districts throughout the United States, several more millions of dollars—including luxury cars, expensive homes, and jewelry—have been forfeited.  "Undoubtedly," the government says, "these purchases were made to enjoy a lifestyle reflective of the [Black Mafia Family] members' increased net worth, a direct consequence of their accumulation of substantial post-expense profits from their drug trafficking."  The government argues that Baker's admissions satisfy the law in both Santos and the Sixth Circuit as to

---

research is correct.  See United States v. Haun, 90 F.3d 1096, 1101 (6th Cir. 1996) ("'Proceeds' [under § 1956] is a commonly understood word in the English language.  It includes 'what is produced by or derived from something . . . by way of total revenue.'") (citing Webster's Third New International Dictionary 1807 (1971)).

5

"profits," because the personal purchases of luxury items were not essential expenses of drug trafficking.

## 2. Discussion

The government's reliance on Justice Stevens's distinction between "proceeds" as "profits" for some predicate offenses and "proceeds" as "receipts" for other offenses is misplaced. The four Justices in the Scalia plurality opinion of Santos said that "[t]he merger problem is not limited to lottery operators." 128 S. Ct. at 2026. Any one of the more than 250 predicate offenses for money-laundering is subject to the merger problem if it "includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else." Id. at 2026–27. Moreover, in part IV of Santos, three of the four Scalia plurality Justices said:

> Since [Justice Stevens's] vote is necessary to our judgment, and since his opinion rests on the narrower ground, the Court's holding is limited accordingly. See Marks v. United States, 430 U.S. 188, 193 (1977). But the narrowness of his ground consists of finding that "proceeds" means "profits" when there is no legislative history to the contrary. *That is all that our judgment holds.* It does not hold that the outcome is different when contrary legislative does exist. Justice Stevens' speculations on that point address a case that is not before him, are the purest of dicta, and form no part of today's holding. Thus, as far as this particular statute is concerned, counsel remain free to argue Justice Stevens' view . . . . They should be warned, however: Not only do the Justices joining this opinion reject that view, but so also (apparently) do the Justices joining the principal dissent.

Id. at 2031 (emphasis added). While this comes from only three Justices, the warning should give pause, especially because the four dissenting Justices clearly state that they "cannot agree with Justice Stevens's approach *insofar as it holds that the meaning of the term 'proceeds' varies depending on the nature of the illegal activity that produces the laundered funds.*" Id. at 2035–36 (Alito, J., dissenting) (emphasis added).

6

Therefore, the government is on shaky ground in relying on Justice Stevens's distinctions.

The government is correct, however, in its argument that even if "proceeds" means "profits" in the context of drug-trafficking, there is sufficient evidence to find that Baker conspired to launder money that involved "at least some post-expense 'profits.'" Although the Scalia plurality in <u>Santos</u> declined the government's "invitation to speculate about congressional purpose," it did suggest a rational interpretation:

> [I]f "proceeds" means "receipts," one could say that the statute was aimed at the dangers of concealment and promotion. . . . If "proceeds" means "profits," one could say that the statute is aimed at the distinctive danger that arises from leaving in criminal hands the yield of a crime. A rational Congress could surely have decided that the risk of leveraging one criminal activity into the next poses a greater threat to society than the mere payment of crime-related expenses and justifies the money-laundering statute's harsh penalties.

<u>Id.</u> at 2026. Here, some "yield" of the crime remained in "criminal hands," as the conspirators purchased cars, homes, and jewelry for their own use with some part of the money that they did not use for essential expenses relating to drug trafficking, that is, with the excess of such expenses that can only be the profits of the trafficking. Furthermore, Baker admitted "deliver[ing] millions of dollars of cocaine proceeds to individuals who facilitated the purchase of cocaine, jewelry, real estate and luxury vehicles in order to promote the drug trafficking activities of the organization." This cycle "leverag[ed] one criminal activity into the next" by continuing to promote drug trafficking.

Moreover, when discussing the knowledge element of the money-laundering offense, the Scalia plurality in <u>Santos</u> gave the following example of circumstantial

7

evidence: "[S]omeone accepting *receipts from* what he knows to be *a long-continuing drug-dealing operation* can be found to know that they *include some profits*." Id. at 2029 (all emphases added). Here, for at least three years, Baker acknowledged accepting and counting money in Detroit and Los Angeles and loading "at least one million" into or out of vehicles, knowing the money was "proceeds from the sale of drugs" by a "continuing operation." Therefore, Baker surely knew the money he was counting included a profit element.

### B. "Designed" to Conceal under 18 U.S.C. § 1956(a)(1)

#### 1. Parties' Arguments

Baker also argues that under Cuellar v. United States, 128 S. Ct. 1994 (2008), the mere hiding of funds during transportation is not sufficient to violate 18 U.S.C. § 1956(a)(1), even if substantial efforts were made to conceal the money. Baker concludes without argument that he did not violate § 1956(h).

The government responds that Cuellar, 128 S. Ct. at 2005, dealt with § 1956(a)(2)(B)(i), which criminalizes certain transportation, including border crossings, and distinguished the *purpose* of international transportation from its *manner*. The Supreme Court in Cuellar held that Congress was referring to the purpose of the international transportation when it used the term "design" in the international money laundering statute. 128 S. Ct. at 2004–05. Cuellar, the government maintains, does not affect its ability to prosecute cases under § 1956(a)(2)(B)(ii), which criminalizes transporting criminal proceeds with the intent to evade a currency transaction reporting requirement, or under 31 U.S.C. § 5332, the bulk of the smuggling statute. Id. at 2001–02.

The government points out that Baker was not charged under § 1956(a)(2), the subsection at issue in Cuellar, but rather under §§ 1956(a)(1) and (h).[3] In any event, the government says, Baker counted drug funds, loaded them into and out of vehicles, and delivered them, knowing those funds would be used to purchase personal items to promote the conspired drug-trafficking activities. Furthermore, the government argues, knowing that the funds were from the sale of cocaine, Baker assisted in concealing the nature, location, ownership, or control of the proceeds with the intent to avoid transaction reporting requirements under state and federal law. Therefore, the government concludes, one can infer that the transactions were designed to conceal the source of the funds.

2. Discussion

---

[3]The relevant parts of 18 U.S.C. § 1956 read:
    (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
    (A)
    (i) with the intent to promote the carrying on of specified unlawful activity; or
    (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
    (B) knowing that the transaction is designed in whole or in part—
    (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
    (ii) to avoid a transaction reporting requirement under State or Federal law,
    . . . .
    (h) Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

The government is correct that one can infer that the transactions in which Baker was involved were designed to conceal the source of the funds. But the government does not show or even argue that *Baker himself* knew that the transactions were designed to conceal or to avoid a reporting requirement, as § 1956(a)(1)(B) requires. Nevertheless, it is not necessary to rely on who knew what when it came to "design[ing]," "conceal[ing]," or "avoid[ing]." Because § 1956(a)(1) uses the disjunctive, "or," it can be satisfied in *any one* of four ways. Section 1956(a)(1)(A)(1) requires only that Baker had the intent to promote the carrying on of specified unlawful activity. Here, the predicate offense to the money laundering is trafficking in contraband, and Baker has affirmed that for three years, he knowingly counted, loaded, and unloaded proceeds from the sale of cocaine to promote drug-trafficking activities of the Black Mafia. Therefore, his assertion that under Cuellar he did not violate § 1956(h) fails.

## V.  Conclusion

In counting, loading, and unloading monetary "proceeds" from what he knew to be a long-continuing drug-dealing operation, Baker knew that the receipts included some "profits." It is not necessary to show that he knew of any design to conceal the nature of the financial transaction or to avoid reporting requirements. Therefore, the Court denies Baker's motion to withdraw the guilty plea as to Count Two.

SO ORDERED.

Dated:  August 27, 2008         s/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 27, 2008, by electronic and/or ordinary mail.

                                                  s/Julie Owens
                                                  Case Manager, (313) 234-5160